```
                UNITED STATES DISTRICT COURT
                   DISTRICT OF NEW JERSEY
```

RAHUL SHAH on assignment of
MONICA M.,                              1:16-cv-5946 (NLH/JS)

      Plaintiff,                **OPINION**

v.

HORIZON BLUE CROSS BLUE
SHIELD OF NEW JERSEY and BLUE
CROSS BLUE SHIELD OF
MASSACHUSETTS,

      Defendants.

**APPEARANCES:**

MICHAEL J. SMIKUN
DANIEL C. NOWAK
LAW OFFICES OF SEAN R. CALLAGY, ESQ
650 FROM ROAD
SUITE 565
PARAMUS, NJ 07652
    On behalf of Plaintiff

MICHAEL E. HOLZAPFEL
BECKER LLC
REVMONT PARK NORTH
1151 BROAD STREET, SUITE 112
SHREWSBURY, NJ 07702
    On behalf of Defendant

**HILLMAN**, **District Judge**

    This is one of many ERISA suits filed by Plaintiff Dr. Rahul Shah, as purported assignee of his individual patients, against his patients' various insurance companies. In each

suit, Plaintiff asserts that the insurance companies wrongfully denied requests for payment of benefits under the patients' health insurance policies, and consequently, Plaintiff's bills for service were not paid, or not fully paid.

Before the Court is Defendant's Motion for Summary Judgment. For the reasons that follow, Defendant's motion will be granted.

## I.

The Court takes its facts from Defendant's Statement of Undisputed Material Facts and Plaintiff's Response. On October 28, 2013, Plaintiff performed a spinal surgery on Monica M. ("Patient"). At the time of the surgery, Patient had health coverage through a self-funded ERISA welfare benefit plan ("DTZ Plan"), sponsored by her employer. To receive coverage under the plan, the procedure must be "medically necessary and appropriate," as determined by Defendant. Plaintiff does not participate with Blue Cross which administers the Plan and is accordingly considered an out-of-network provider.

After Patient's surgery, Plaintiff submitted $322,850 in charges to Defendant for out-of-network reimbursement. The claim was denied because the surgery was determined to not be medically necessary and appropriate. This decision was upheld on Plaintiff's administrative appeal.

As an out-of-network provider, Plaintiff asserts

2

derivative, rather than direct, standing to assert the claims pleaded in the Complaint. Plaintiff relies on an "Assignment of Benefits & Ltd. Power of Attorney & Medical Records Authorization" purportedly given by Patient to Plaintiff and a "Christian Brenner, PA-C" on March 27, 2014. Notably, the DTZ Plan expressly prohibits third-party assignments.

Plaintiff's Complaint asserted four claims: (1) breach of contract; (2) denial of benefits in violation of § 1332(a)(1)(B); (3) breach of fiduciary duty in violation of § 1332(a)(3)(B); and (4) failure to maintain a reasonable claims process pursuant to 29 C.F.R. 2560.503-1. Following a motion to dismiss by Defendant, this Court dismissed as moot Count One pursuant to Federal Rule of Civil Procedure 41(a) and Count Four. Defendant filed its Motion for Summary Judgment on September 29, 2017.[1]

**II.**

This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

**III.**

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to

---

[1] Defendant Horizon Blue Cross Blue Shield of New Jersey was dismissed from this action by stipulation on March 8, 2017.

interrogatories, and admissions on file, together with the affidavits if any,' . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."); see Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing" – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." (citing Celotex, 477 U.S. at 325)).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s].'" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by

the moving party.  Anderson, 477 U.S. at 257.

**IV.**

In May 2018, the Third Circuit concluded that "anti-assignment clauses in ERISA-governed health insurance plans as a general matter are enforceable." Am. Orthopedic & Sports Med. v. Independence Blue Cross Blue Shield, 890 F.3d 445, 453 (3d Cir. 2018).  "In determining what claims a healthcare provider may bring under ERISA, courts look to the language of the assignment."  Ctr. for Orthopedics & Sports Med. v. Horizon, No. 13-1963, 2015 WL 5770385, at *4 (D.N.J. Sept. 30, 2015).  The Court finds the anti-assignment clause here to be clear and unambiguous.  It states:

> You cannot assign any benefit or monies due from this health plan to any person, corporation, or other organization without [Blue Cross's] written consent. Any assignment by you will be void.  Assignment means the transfer of your rights to the benefits provided by this health plan to another person or organization.

Other courts considering this same language have similarly found it to be clear and unambiguous.  See, e.g., Advanced Orthopedic & Sports v. Blue Cross Blue Shield of Mass., No. 14-7280, 2015 WL 4430488, at *6 (D.N.J. July 20, 2015) (finding the clause was not ambiguous and that it was valid on its face); accord Drzala v. Horizon Blue Cross Blue Shield, No. 15-8392, 2016 U.S. Dist. LEXIS 66122, at *12 (D.N.J. May 18, 2016) ("The clause in Advanced Orthopedics not only defines the instances in which a

6

beneficiary can assign (in the case of written consent), but also provides for the result if an improper assignment does, in fact, occur (it will be void). The anti-assignment provision in <u>Advanced Orthopedics</u> also has the additional benefit of explicitly defining what an assignment is."). Plaintiff does not allege Defendant ever gave written consent for his purported assignment. Accordingly, the Court finds the purported assignment to be void and, consequently, that Plaintiff lacks standing under ERISA. Plaintiff's arguments to the contrary are unconvincing.

Plaintiff argues Defendant waived the anti-assignment clause "through a course of dealing" with Plaintiff. Specifically, Plaintiff argues the following shows a waiver through course of conduct: (1) "Defendant issued an [explanation of benefits] and medical report directly to Plaintiff denying payment for Patient's treatment" following Plaintiff's submission of a health insurance claim form; and (2) Defendant responded to Plaintiff's appeal with an appeal denial. It is Plaintiff's contention that "Defendant waived the right to its enforcement by accepting and basing its decisions on the [health insurance claim form] without raising any issue about Plaintiff's right to engage in the very process it administers for such purposes."

The Court rejects this argument. "[I]t is now well-settled

law in the District of New Jersey that the Plan did not waive the Anti-Assignment Clause by dealing directly with the Medical Provider in the claim review process, or by directly remitting payment to the Medical Provider." Emami v. Quinteles IMS, No. 17-3069, 2017 WL 4220329, at *3 (D.N.J. Sept. 21, 2017); accord Univ. Spine Ctr. v. Aetna, Inc., No. 17-8161, 2018 U.S. Dist. LEXIS 92578, at *13 (D.N.J. May 31, 2018) (finding that payment of part of the plaintiff's claim and engagement in the appeals process is "insufficient to establish waiver"); IGEA Brain & Spine, P.A. v. Blue Cross & Blue Shield of Minn., No. 16-5844, 2017 WL 1968387, at *3 (D.N.J. May 12, 2017) (finding that the plaintiff's preparing of a health insurance claim form demanding reimbursement for services and the plaintiff's engagement in the administrative appeals process with the defendant was "insufficient to constitute a waiver" and stating that "[s]imply engaging in a claim review process with Plaintiff does not demonstrate a 'clear and decisive act' to waive the Plan's anti-assignment provisions and confer upon Plaintiff standing"). Indeed, the Third Circuit's recent opinion, while considering a claim under Pennsylvania law, held identically in considering the appellant's waiver argument based on the processing of a claim form and the issuing of a check to the appellant. See Am. Orthopedic, 890 F.3d at 454 (citing case law from the District of New Jersey and concluding that "routine processing of a claim

8

form, issuing payment at the out-of-network rate, and summarily denying the informal appeal do not demonstrate 'an evident purpose to surrender' an objection to a provider's standing in a federal lawsuit").

Plaintiff also argues the anti-assignment clause should not be applied in this case because it concerns a "post-loss claim and not a pre-loss policy." This argument has been widely rejected by courts in this district. See, e.g., Kayal Orthopaedic Ctr., P.C. v. Empire Blue Cross Blue Shield, No. 16-9059, 2017 U.S. Dist. LEXIS 153763, at *8 (D.N.J. Sept. 21, 2017) ("Plaintiff has failed to provide sufficient facts that suggest the pre-loss/post-loss distinction is a meaningful, relevant, or appropriate means of invalidating an otherwise unambiguous anti-assignment provision in an ERISA-governed health plan."); Univ. Spine Ctr. v. Horizon Blue Cross Blue Shield of N.J., No. 16-9253, 2017 WL 3610486, at *2 n.3 (D.N.J. Aug. 22, 2017) ("[A]nti-assignment clauses in health benefit plans are enforceable, even when the patient assigns a post-loss claim.").

Finally, the Court finds no merit to Plaintiff's argument that the anti-assignment clause must be held inapplicable because Plaintiff is the provider of the service. See, e.g., Univ. Spine Ctr., 2017 WL 3610486, at *2 n.3 ("[A]n anti-assignment clause can be enforced against the provider of the

services that the Plan is maintained to furnish."); Univ. Spine Ctr. v. Aetna Inc., No. 17-8160, 2018 WL 1409796, at *5 n.6 (D.N.J. Mar. 20, 2018). The Court concludes that Plaintiff lacks standing in this matter.

Further, the Court notes that Plaintiff's claim for breach of fiduciary duty must be dismissed as Plaintiff seeks monetary damages. Plaintiff's Complaint outlines four bases for its breach of fiduciary duty claim:

1. Failing to issue an Adverse Benefit Determination in accordance with the requirements of ERISA and applicable regulations;

2. Participating knowingly in, or knowingly undertaking to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

3. Failing to make reasonable efforts under the circumstances to remedy the breach of such other fiduciary; and

4. Wrongfully withholding money belonging to Plaintiff.

Plaintiff asks for the following relief from his breach of fiduciary duty claim: (1) payment of $322,850; (2) payment of all benefits Patient would be entitled to; (3) compensatory damages; (4) attorneys' fees and costs; and (5) any other relief deemed just and equitable.

Plaintiff asserts his breach of fiduciary duty cause of action pursuant to 29 U.S.C. § 1332(a)(3), which "does not authorize a claim seeking money damages." Plastic Surgery Ctr., P.A. v. CIGNA Health & Life Ins. Co., No. 17-2055, 2018 WL

10

2441768, at *13 (D.N.J. May 31, 2018). 29 U.S.C. § 1332(a)(3) provides that

> [a] civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan.

While Plaintiff argues the Court should deny this motion because "Plaintiff might still be entitled to 'other appropriate equitable relief,'" Plaintiff's argument appears to be more appropriate for a motion to dismiss than a summary judgment motion. Courts in this district have frequently declined to dismiss a breach of fiduciary duty claim for seeking only monetary relief, finding such a determination would be premature at the motion to dismiss stage. See, e.g., Univ. Spine Ctr., 2017 WL 3610486, at *4 ("Courts in this district and elsewhere have held that because a plaintiff may plead in the alternative, dismissal of a breach of fiduciary duty claim as duplicative of a benefits claim is generally not appropriate on a motion to dismiss. At this early stage, the Court cannot state with certainty the precise nature of USC's injuries or the appropriateness of any particular remedy, and thus cannot determine whether its claim under Section 502(a)(3) is coterminous with its claim under Section 502(a)(1)(B)."); Lourdes Specialty Hosp. of S. N.J. v. Anthem Blue Cross Blue

11

Shield, No. 16-7631, 2017 WL 3393807, at *4 (D.N.J. Aug. 7, 2017).  Plaintiff has not demonstrated any appropriate equitable relief on summary judgment.

Defendant's Motion for Summary Judgment will be granted.  An appropriate Order will be entered.

Date: June 29, 2018              s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.